UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF BSMA LIMITED FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 22-MC _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1
FACTUAL BACKGROUND..........................................................................................................2
LEGAL STANDARDS ...................................................................................................................4
ARGUMENT...................................................................................................................................6
I.   THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782....................................................................................................................6
    A.   Respondents Are "Found" in the Southern District of New York...........................6
    B.   The Discovery Sought is "For Use" in Pending Foreign Proceedings ....................6
    C.   The Petitioner is an "Interested Person" ..................................................................7
II.  THE DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF PERMITTING THE REQUESTED DISCOVERY ...........................................................7
    A.   Respondents Are Not Parties to the Foreign Proceedings .......................................7
    B.   The U.K. Court Will Be Receptive to Evidence Obtained Through This Application................................................................................................................7
    C.   Petitioner is Not Trying to Circumvent Foreign Proof-Gathering Restrictions ..............................................................................................................8
    D.   This Application is Not Unduly Intrusive or Burdensome ......................................9
CONCLUSION..............................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allianz Global Investors GmbH, et al. v. Bank of Am. Corp., et al.*,
 No. 1:18-cv-10364 (S.D.N.Y.) ......................................................................................... 3

*Allianz Global Investors GmbH & Ors. v. Barclays Bank PLC & Ors.*,
 Case CL-2018-000840 .................................................................................................... 2

*Allianz Global Investors GmbH & Ors. v. Deutsche Bank AG London & Ors*.
 CL-2020-000736 ............................................................................................................ 2

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
 673 F.3d 76 (2d Cir. 2012) ...................................................................................... 4, 5, 8

*Euromepa S.A. v. R. Esmerian, Inc.*,
 51 F.3d 1095 (2d Cir. 1995) ......................................................................................... 5, 7

*Hertz Corp. v. Friend*,
 559 U.S. 77, 93 (2010) .................................................................................................... 5

*In re Accent Delight Int'l Ltd.*,
 2018 WL 2849724 (S.D.N.Y. June 11, 2018) ................................................................. 7

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
 121 F.3d 77 (2d Cir. 1997) ........................................................................................... 5, 8

*In re Application of OOO Promnesftstroy*,
 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) .................................................................. 7

*In re Bayer AG*,
 146 F.3d 188 (3d Cir. 1998) ......................................................................................... 4, 9

*In re Catalyst Managerial Servs., DMCC*,
 680 F. App'x 37 (2d Cir. 2017) ....................................................................................... 6

*In re Deposit Guarantee Fund (Ukraine)*,
 2021 WL 1857090 (S.D.N.Y. Apr. 21, 2021) ................................................................. 6

*In re Edelman*,
 295 F.3d 171 (2d Cir. 2002) ............................................................................................ 5

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to
 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign
 Proceedings*,
 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ................................................................... 4

*In re Gianoli Aldunate*,
    3 F.3d 54 (2d Cir. 1993) .................................................................................................... 4

*In re Gushlak*,
    2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) ........................................................................ 4

*In re Vale S.A.*,
    2020 WL 4048669 (S.D.N.Y. July 20, 2020) ........................................................................ 7

*In re WildBrain Fam. Int'l Ltd.*,
    2020 WL 6135765 (S.D.N.Y. Oct. 19, 2020) ........................................................................ 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................... 1, 2, 5, 6, 7, 8

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
    62 F. Supp. 3d 358 (S.D.N.Y. 2014) .................................................................................. 6, 7

*Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*,
    2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) ........................................................................... 6

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ....................................................................... 9

**Statutory Authorities**

28 U.S.C. §1782 ................................................................................................... 1, 3, 4, 5, 6, 7, 8, 9

28 U.S.C. §1782(a) ........................................................................................................................ 6

Petitioner BSMA Limited respectfully submits this Memorandum of Law in support of its Application and Petition pursuant to 28 U.S.C. § 1782 for an order authorizing it to obtain limited discovery from CME Group Inc. and EBS Dealing Resources, Inc. (together, the "Respondents"), in the form of the subpoenas *duces tecum* attached to the Brockett Declaration being filed concurrently herewith.

## PRELIMINARY STATEMENT

This application arises from a case brought in the United Kingdom claiming certain banks manipulated the foreign exchange ("FX") market.  Respondents are not parties to those foreign proceedings, but nonetheless are known to have relevant documents because they operate foreign exchange marketplaces.  Indeed, *Respondents have already gathered and produced the documents at issue in this application*, by way of subpoenas issued in a related U.S. action.  This application is brought merely to provide a mechanism for those already-gathered materials to also be used in the foreign proceedings.

This application meets all of the requirements of Section 1782.  Respondents "reside" or are "found" in this district.  The discovery is for use in a foreign proceeding.  The application is made by an interested party; Petitioner is a claimant in the foreign proceeding.  Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel Corp. v Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) decision favors the discovery sought:  (1) Respondents are not parties to the foreign proceedings; (2) there is no reason to believe the English courts would not be receptive to evidence obtained through this application; (3) this application is not trying to circumvent proof-gathering restrictions; and (4) this application is not unduly intrusive or burdensome as it seeks data already produced in the parallel U.S. case, *Allianz Global Investors*

1

*GmbH, et al. v. Bank of Am. Corp., et al.*, No. 1:18-cv-10364 (S.D.N.Y.) (the "U.S. Proceeding").  Indeed, Respondents have indicated that they do not intend to oppose to this Application because the Application seeks only those documents that have already been gathered and produced by Respondents in the U.S. Proceeding..

Accordingly, the Petitioner respectfully requests that the Court permit the requested subpoenas to be issued.

## FACTUAL BACKGROUND

***The parties.***  The Petitioner is a private investment fund.  The Petitioner engaged in numerous FX transactions that were allegedly impacted by a conspiracy among certain banks.[1]

Respondent CME is the world's largest financial derivatives exchange, offering trades in futures contracts and options on futures in the FX market using its CME Globex trading platform.  CME is a U.S.-based company and maintains one of its five Global Regional offices in New York, New York, with its headquarters in Illinois.

Respondent EBS is a foreign exchange matching platform permitting banks and other major financial institutions to connect and trade with buyers and sellers of currencies in more than 50 countries.  In 2018, EBS became a wholly-owned subsidiary of CME.  EBS retains its headquarters in New York, New York.

---

[1]   The allegedly conspiring defendant banks are:  Bank of America, Barclays, BNP Paribas, Citibank, Deutsche Bank, Goldman Sachs, HSBC, JP Morgan, Morgan Stanley, Royal Bank of Canada, Royal Bank of Scotland, Société Générale, Standard Chartered, and UBS.

***The foreign proceedings.*** The Petitioner, along with similarly situated entities, filed two actions in the United Kingdom,[2] seeking to recover losses caused by certain banks' anti-competitive conduct in manipulating the FX market. The conduct is similar and related to that which led to billions of dollars in regulatory and civil settlements around the globe.[3] This includes, for instance, three Decisions of the European Commission, finding that certain banks had violated Article 101 TFEU / Article 53 EEA, prohibiting anticompetitive cartels and restrictive agreements. Generally speaking, the defendant banks were using "chat rooms" and other means to coordinate their behavior, leading to artificial prices on FX transactions.

***The documents to be requested were already gathered by Respondents.*** The requested subpoenas seek data on FX transactions conducted through Respondents' FX trading platforms and exchanges. Data on FX transactions is plainly relevant to antitrust cases seeking to identify manipulative FX conduct and measure its impact on the victim's own FX transactions. Indeed, the parties have *already* met and conferred and *agreed* as to the exact materials to be produced in connection with subpoenas issued in the related U.S. Proceeding.[4] The application here is thus only necessary to ensure that the same materials can also be used in connection with the foreign proceedings.

---

[2] Case CL-2018-000840, *Allianz Global Investors GmbH & Ors. v. Barclays Bank PLC & Ors.*, and case CL-2020-000736, *Allianz Global Investors GmbH & Ors. v. Deutsche Bank AG London & Ors*.

[3] *See, e.g.*, https://www.justice.gov/opa/pr/five-major-banks-agree-parent-level-guilty-pleas.

[4] *Allianz Global Investors GmbH, et al. v. Bank of Am. Corp., et al.*, No. 1:18-cv-10364 (S.D.N.Y.).

## LEGAL STANDARDS

Section 1782 permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding. *Intel*, 542 U.S. at 259. The statute states, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782. Applications under Section 1782 are routinely decided by this Court on an *ex parte* basis.[5] Such applications are based on "modest prima facie elements" in order to effectuate "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given 'increasingly broad applicability.'" (citing *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993)).

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before

---

[5] *See In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016) ("As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted ex parte, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas are available to every subpoenaed party via a motion to quash or the defense of an application to compel compliance with the subpoenas."); *In re Gushlak*, 2012 WL 1514824, at *3 n.4 (E.D.N.Y. Apr. 30, 2012) (citing several cases, including from this district, and noting that "courts routinely grant § 1782 applications ex parte, limiting respondents' challenges to after the subpoena is served").

a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80.

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application:  (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests.  *See Intel*, 542 U.S. at 264-65.

Moreover, courts in this Circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).  Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings.  *See, e.g.*, *Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

# ARGUMENT

## I. THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

### A. Respondents Are "Found" in the Southern District of New York

Respondents are "found" in this District for purposes of Section 1782 because CME maintains one of its five Global Regional offices in New York, New York, and EBS is headquartered here. *See Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters"); *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (noting that a corporation is found in the district where it is "essentially at home").

### B. The Discovery Sought is "For Use" in Pending Foreign Proceedings

The civil actions in the United Kingdom indisputably qualify as a proceeding in a "foreign or international tribunal" for purposes of Section 1782.[6] The information sought in the subpoenas is just as plainly "for use" in those foreign proceedings. The foreign proceedings are about a conspiracy impacting the FX market, and the information sought is trade data on the FX market.

---

[6] Indeed, numerous courts have found that civil proceedings before English courts satisfy Section 1782. *See, e.g., In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014); *In re Deposit Guarantee Fund (Ukraine)*, 2021 WL 1857090, at *1 (S.D.N.Y. Apr. 21, 2021).

### C. The Petitioner is an "Interested Person"

There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. The Petitioner is a claimant in the foreign proceedings and is therefore an "interested person" under Section 1782.

## II. THE DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF PERMITTING THE REQUESTED DISCOVERY

### A. Respondents Are Not Parties to the Foreign Proceedings

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, the Respondents are not parties to the foreign proceedings.

### B. The U.K. Court Will Be Receptive to Evidence Obtained Through This Application

Under the second *Intel* factor, courts are cautioned against issuing subpoenas if there is reason to think the foreign tribunal would "*reject* evidence obtained with the aid of section 1782." *In re Application of OOO Promnesftstroy*, 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009). However, the Second Circuit has made clear that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa*, 51 F.3d at 1102. A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

7

There is no reason to believe that English courts would not be receptive to evidence obtained through this application. To the contrary, there is strong reason to believe that the Petitioner will have the opportunity to use the information obtained in this Application in advancing and proving its claims, as Section 1782 assistance is routinely granted in connection with U.K. proceedings.[7]

### C. Petitioner is Not Trying to Circumvent Foreign Proof-Gathering Restrictions

The Supreme Court has expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."); *Brandi-Dohrn*, 673 F.3d at 82 ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."). Nor is there any requirement that a Petitioner must exhaust available remedies in the foreign court first. *See Metallgesellschaft AG*, 121 F.3d at 79 ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

---

[7] *See, e.g., In re WildBrain Fam. Int'l Ltd.*, 2020 WL 6135765, at *2 (S.D.N.Y. Oct. 19, 2020); *In re Vale S.A.*, 2020 WL 4048669, at *4 (S.D.N.Y. July 20, 2020); *In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) ("There is no reason to believe that the effort to obtain discovery here will circumvent any policies of the U.K. regarding discovery").

Rather, the third *Intel* factor instructs courts to consider if the Section 1782 request is merely an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Here, the Petitioner merely seeks trading data from Respondents that they have already agreed to produce, or have produced, in related U.S. proceedings.  Such does not evidence any bad faith by the Petitioner, and there is no reason to think the English jurisdiction has any law or public policy against such discovery.

### D. This Application is Not Unduly Intrusive or Burdensome

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the trade data sought by the subpoenas are narrowly tailored and directly relevant to the issues in the foreign proceedings.  Any burden Respondents may incur by producing the requested discovery is both modest and proportionate to the needs of the foreign proceedings.  Respondents have already produced the data sought in the U.S. case, so there should be limited burden, if any, for Respondents to make the same productions available in the foreign proceedings.  To the extent Respondents have any concerns relating to confidential information, protective orders have been established in the foreign proceedings already.  Petitioner has also represented to the Respondents that the confidentiality ring orders in place in the foreign proceedings offer broadly comparable, and thus adequate, protections, including over materials

designated as Highly Confidential, to those provided by the protective order issued in the U.S. proceeding, and that the Petitioner will exercise all reasonable endeavours, within the terms of those confidentiality ring orders, to ensure that the confidential information produced by Respondents will continue to be afforded the same level of comparable protection under those confidentiality ring orders for the duration of the foreign proceedings.  Should, for any reason, the confidentiality designation of the confidential information produced by Respondents be challenged in the foreign proceedings, the Petitioner will (i) take all reasonable steps to resist such challenge, such that the confidentiality designation of the confidential information is maintained, and (ii) inform the Respondent of said challenge as soon as reasonably practicable, such as to allow the Respondent the opportunity to intervene in such challenge should it so wish. Khatoun Decl. ¶28; *see Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *1 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.").  Additionally, Respondents have indicated they will not oppose this application as it imposes no additional burden beyond what is already being collected and produced in the U.S. Proceeding.

## CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that the Court grant the application so that the requested subpoenas can be issued. A proposed order is included as Exhibit 1 to the Brockett Declaration.

Dated:  New York, NY
        February 16, 2022

Respectfully submitted,

/s/ *Daniel L. Brockett*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE, FLOOR 22
NEW YORK, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for the Petitioner*